UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| FRANCIS B. LYNCH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 03-479-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RANDY SEASE and BRENDA WALTZ, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the Francis Lynch's Motion for Summary Judgment. [Record No. 25] Lynch is seeking judgment on the counterclaims asserted against him by Randy Sease and Brenda Waltz. Through their counterclaim, Sease and Waltz have asserted claims against Lynch for breach of contract, fraud and promissory estoppel. For the reasons discussed herein, the Court will deny Lynch's motion.

**I.    BACKGROUND**

In February 1995, Lynch, Sease and Waltz entered into an agreement in which they agreed that Sease and Waltz, as part of a Contact Group, would provide prospective funding opportunities to Lynch for the acquisition of Somerset Oil. In exchange, Lynch agreed to pay the Contact Group a "finder's fee . . . when the financing or loan [was] approved and closed by Lynch." [Record No. 13, Ex. 1] Pursuant to this agreement, Sease and Waltz provided and arranged for PNC Bank in Kentucky to assist with funding the potential acquisition of Somerset Oil. The record reflects that the financing deal with PNC Bank did not occur. Although Lynch

did not purchase Somerset Oil at that time, he later purchased the business in 1999. However, Sease and Waltz were never paid their "finder's fee." Lynch contends that Sease and Waltz are not entitled to their fee inasmuch as the purchase of Somerset Oil was "totally unrelated to the Agreement." [Record No. 25, p. 2] He notes that the purchase of the company occurred more than three years after the parties entered into the Agreement at issue in this case. Moreover, Lynch contends that Sease and Waltz did not arrange the financing that ultimately allowed him to purchase Somerset Oil. Instead, Cy Waddle, the seller of Somerset Oil, arranged the financing. On September 9, 2003, Lynch filed the underlying action seeking a declaration that Sease and Waltz are not entitled to a finder's fee.

In response, Sease and Waltz filed a counterclaim against Lynch for breach of contract, fraud and promissory estoppel. According to Sease and Waltz, Lynch misrepresented the nature of his meetings with PNC Bank and Waddle. Sease and Waltz contend that Lynch assured them that the loan transaction process was progressing towards a final closing, but, in reality, Lynch was employing a scheme to preclude the Contact Group from providing the funding sources for the acquisition of Somerset Oil and, therefore, from collecting their fee.

Sease and Waltz contend that Lynch, in continuing to misrepresent the nature of his discussions with PNC, requested that they not participate in the bank discussions and closing. Sease and Waltz did not attend Lynch's scheduled closing with the bank. However, on the Monday following the scheduled closing, Lynch reported to Sease and Waltz that Waddle refused to go through with the deal. According to Sease and Waltz, Lynch stated that "we were all there at the table ready to sign the papers and at the last moment, the old man got sentimental

and couldn't do it."   [Record No. 27, citing Lynch depo., p. 31]  Sease and Waltz state that Lynch falsely led them to believe that Waddle was not going to sell and that this misrepresentation precluded them from proceeding forward with the acquisition and the funding opportunities.  Sease and Waltz further note that Lynch actually purchased Somerset Oil in 1999 without their knowledge.  They note that they were not notified of the sale nor were they given the opportunity to provide funding sources for Lynch's acquisition of the company.

Lynch has now moved for summary judgment regarding the claims of breach of contract, fraud and promissory estoppel.  Lynch has offered a different version of the events in support of his motion.  According to Lynch, Sease and Waltz arranged only one meeting pursuant to the 1995 agreement, which was the meeting with PNC Bank.  Lynch contends that at this meeting, PNC informed him that it could not provide financing because it was getting out of the energy business.  At that point, Lynch contends that the deal to purchase Somerset Oil evaporated.  He asserts that the opportunity to purchase the company did not arise again for three years.

Lynch also asserts that "the ultimate purchase of Somerset [Oil] was an entirely different deal than the one being negotiated in 1995-96." [Record No. 25, p. 3]  Specifically, he claims that Somerset Oil was purchased with a different group of investors and for lower price than the one negotiated in 1995-96. [Record No. 25, pp. 2-3]  Therefore, Lynch argues that he did not breach the contract with Sease and Waltz.

Lynch asserts that he is entitled to summary judgment on the counterclaims inasmuch as he never agreed or promised to use the services of Sease and Waltz or accept the funding provided by the Contact Group.  According to Lynch, because the written agreement between

the parties stopped short of requiring him to accept the financing arranged by the Contact Group, Sease and Waltz's claims for breach of contract, fraud and promissory estoppel fail as a matter of law.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415 (6th Cir. 2002). Once the movant has satisfied this burden, the non-movant must go beyond the assertions made in the pleadings and come forward with specific evidence to demonstrate that there is a genuine issue of material fact. *Id.* The nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, at 324. However, the trial court does not have a duty to search the entire record to

establish that it is bereft of any genuine issue of material fact. *In re Morris*, 260 F.3d 654 (6th Cir. 2002). The nonmoving party has an affirmative obligation to direct the court's attention to those specific portions of the record upon which it seeks to rely to create genuine issues of material fact. *Id.* In determining whether there are any genuine issues of material fact, the Court must review all the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### III. ANALYSIS

As noted above, Lynch argues that there is no provision in the contract that required him to accept the financing arranged by Sease and Waltz. Therefore, he asserts that he was free to accept financing from other sources or simply refuse the financing offered by a lender presented to him by Sease and Waltz. Thus, Lynch claims that there was no breach of contract and he is entitled to summary judgment on this claim. In addition, Lynch asserts that, because he had the legal right to back out of any financing deal arranged by the Contact Group, Sease and Waltz cannot maintain a fraud claim against him. *See Mishoe v. General Motors Acceptance Corp.*, 107 S.E.2d 43 (S.C. 1958) (holding that where one acts within his legal right, fraud will not be presumed or implied). With respect to the promissory estoppel claim, Lynch argues that because he was not obligated to accept the funding arranged by the Contact Group, Sease and Waltz cannot maintain a cause of action against him for promissory estoppel inasmuch as there was no promise upon which Sease and Waltz could have detrimentally relied.

A. *Breach of Contract*

Under South Carolina law, "[t]here exists in every contract an implied covenant of good faith and fair dealing." *Parker v. Byrd*, 420 S.E.2d 850 (S.C. 1992) (citing *Tharpe v. G.E. Moore Co.*, 174 S.E.2d 397, 399 (S.C. 1970)). Here, Sease and Waltz have alleged that Lynch did not act in good faith in facilitating the acquisition of Somerset Oil. Specifically, they contend that by falsely informing them that Somerset Oil was no longer for sale, Lynch prevented them from finding other entities to fund the purchase of the company and, in effect, precluded them from performing under the contract so that they could receive their finder's fee. Conversely, Lynch argues that he was not obligated to accept the funding opportunities provided to him by Sease and Waltz and, therefore, there was no breach of their agreement. Sease and Waltz respond to this argument by pointing out that the "central purpose and intent of the Agreement" was for the Contact Group to provide Lynch with the funding opportunities so that Lynch could purchase the company. [Record No. 27, p. 7] In exchange, Lynch was to pay the Contact Group a finder's fee. According to Sease and Waltz, Lynch's misrepresentation that Somerset Oil was no longer for sale made it impossible for them to perform under the contract. They argue that this intentional misrepresentation was material to the transaction inasmuch as it terminated the Contact Group's ability to secure the funding.

Viewing the facts in a light most favorable to Sease and Waltz, the Court finds that there is a genuine issue of material fact regarding whether Lynch breached the implied covenant of good faith and fair dealing by his alleged misrepresentations to Sease and Waltz. Therefore, Lynch is not entitled to summary judgment on the breach of contract claim.

B.  *Fraud*

To establish fraud under South Carolina law,[1] a party must prove: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *Robertson v. First Union Nat. Bank*, 565 S.E.2d 309, 313-14 (S.C. Ct. App. 2002). Sease and Waltz have alleged that Lynch advised them that Waddle no longer wanted to sell Somerset Oil and that, based on this representation, they were unable to perform under their contract with Lynch. Sease and Waltz also allege that, for four to six months prior to the failed closing with PNC, Lynch was scheming to purchase Somerset Oil but prevent the Contact Group from collecting a finders fee or participating in the future financing of the company. According to Sease and Waltz, Lynch misrepresented the status of PNC Bank closing and Waddle's willingness to sell Somerset Oil. Sease and Waltz have alleged that Lynch's statement that Waddle would not sell was false and that this misrepresentation was material inasmuch as it precluded any further activity by them under the contract.

Sease and Waltz have produced sufficient evidence to demonstrate that there is a genuine issue of material fact regarding whether Lynch falsely informed Sease and Waltz that Waddle was no longer willing to sell Somerset Oil. This alleged representation was material and was one

---

[1] In their response, Sease and Waltz raise the issue of choice of law, stating that "[t]he claims other than breach of the Agreement arguably are governed by Kentucky law." However, they assume that South Carolina law applies to these claims because Lynch relies upon South Carolina law in his motion for summary judgment. Inasmuch as the parties have relied on South Carolina law in their briefs, the Court will evaluate the various claims based upon authority from that jurisdiction.

-7-

in which Sease and Waltz have indicated that they relied upon in determining that it was no longer necessary to obtain funding for Lynch to purchase Somerset Oil. The entire agreement among the parties was based on the underlying fact that Somerset Oil was for sale. If the allegations of Sease and Waltz are true, then a reasonable jury could conclude that Lynch committed fraud by misrepresenting to Sease and Waltz that Somerset Oil was not for sale.

        C.    *Promissory Estoppel*

The elements of promissory estoppel under South Carolina law are: (1) the presence of an unambiguous promise; (2) reasonable reliance upon the promise by the party to whom the promise is made; (3) the reliance is expected and foreseeable by the party who makes the promise; and (4) the party to whom the promise is made sustains injury in reliance on the promise. In *Duke Power Co. v. South Carolina Public Comm'n*, 326 S.E.2d 395 (S.C. 1985), the South Carolina Supreme Court noted that:

> This doctrine declares [that] [a]n estoppel may arise from the making of a promise, even though without consideration, if it was intended that the promise should be relied upon, and in fact it was relied upon, and if a refusal to enforce it would be virtually to sanction the perpetration of fraud or would result in other injustice.

*Id.* at 406 (citing *Higgins Constr. Co. v. Southern Bell Tel. and Tel. Co.*, 281 S.E.2d 469, 470 (S.C. 1981)). A contract and promissory estoppel are two different and distinct legal theories. *Duke*, 326 S.E.2d at 406. Unlike a contract which requires a meeting of the minds and consideration, promissory estoppel looks at a promise, its subsequent effect on the promisee, and in certain cases bars the promisor from making an inconsistent disposition of the property. *See Satcher v. Satcher*, 570 S.E.2d 535 (S.C. Ct. App. 2002).

Sease and Waltz contend that summary judgment is not appropriate on this claim. They contend that "Lynch unambiguously promised to meet with PNC Bank" [Record No. 27, p. 11] and to provide "any information, verifications, warranty and/or any statement that [the bank] may need in order to . . . execute the approval of financing for the acquisition." [Record No. 27, citing the Agreement, Record No. 12, Ex. 1] Sease and Waltz allege that they relied on this promise and expended significant time and resources to arrange the meeting between Lynch and PNC Bank in an attempt to provide Lynch with financing for purchase of Somerset Oil. However, they contend that Lynch had no intention to fulfill this promise because he was engaged in a scheme to eliminate the Contact Group from their role in the purchase of Somerset Oil to specifically avoid paying the finder's fee. As part of this scheme, Sease and Waltz contend that Lynch did not provide the bank with information *in an effort to execute a financing deal for the purchase of Somerset Oil*. Further, they assert that he misrepresented to them that PNC was unable to provide financing because it was getting out of the energy business. In sum, Sease and Waltz argue that there is at least a genuine issue of material fact on their promissory estoppel claim. That is, they contend that a reasonable jury could conclude that Lynch promised that he would meet with PNC bank for the purpose of obtaining funding for the purchase of Somerset Oil, that Lynch had no intention of fulfilling that promise, that Sease and Waltz relied on the promise, that Lynch was aware of this reliance, and that they sustained financial loss based on this promise. Viewing the evidence in a light most favorable to Sease and Waltz, the Court agrees that there is a genuine issue of material fact regarding Seasef and Waltz's promissory estoppel claim.

## IV. CONCLUSION

Accordingly, for the reasons discussed herein, it is hereby

**ORDERED** that Lynch's motion for summary judgment [Record No. 25] is **DENIED**.

This 16th day of September, 2005.

Signed By:
*Danny C. Reeves* DCR
United States District Judge