UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| FRANCIS B. LYNCH, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | Civil Action No. 6: 03-479-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RANDY SEASE and BRENDA WALTZ, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants/Counterclaim Plaintiffs, | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of the Plaintiff/Counterclaim Defendant's motion for judgment notwithstanding the verdict.[1] [Record No. 66] For the reasons discussed below, the Court will deny the motion.

## I. BACKGROUND

On September 9, 2003, Plaintiff/Counterclaim Defendant Francis Lynch filed a declaratory judgment action against Defendants/Counterclaim Plaintiffs Randy Sease and Brenda Waltz seeking a declaration from this Court that Sease and Waltz were not entitled to a finder's fee pursuant to a 1995 contract. Through this contract, the parties agreed that Sease and Waltz, as part of a Contact Group, would provide prospective funding opportunities to Lynch for the acquisition of Somerset Oil. In exchange, Lynch agreed to pay the Contact Group a "finder's

---

[1] The 1991 amendments of Rule 50 of the Federal Rules of Civil Procedure replaced the terminology "judgment notwithstanding the verdict," or "JNOV," with the current term of "renewed judgment as a matter of law." Therefore, although the parties have used the term "judgment notwithstanding the verdict," the Court will utilize the current terminology.

-1-

fee . . . when the financing or loan [was] approved and closed by Lynch." [Record No. 33, Ex. 1]

This action proceeded to trial on March 7, 2006. At the close of Sease and Waltz's proof, counsel for Lynch moved for judgment as a matter of law. The Court took the motion under advisement but denied it after the close of proof on Lynch's case. On March 8, 2006, the jury returned a verdict in favor of Sease and Waltz on their breach of contract, promissory estoppel and fraud claims. The jury awarded damages in the amount of $100,000.00 to Sease and $50,000.00 to Waltz on their promissory estoppel claim. However, the jury concluded that Sease and Waltz were not entitled to damages on their breach of contract and fraud claims. Subsequent to the jury verdict and within the time allowed by the Federal Rules of Civil Procedure, Lynch filed the instant motion for renewed judgment as a matter of law.

**II.    LEGAL STANDARD**

Rule 50 of the Federal Rules of Civil Procedure provides, in relevant part, as follows:

(b)   Renewal of Motion for Judgment After Trial; Alternative Motion for New Trial. Whenever a motion for a judgment as a matter law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment. A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative. If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law.

Fed.R.Civ.P. 50(b). In federal diversity cases, the court must apply the judgment as a matter of law standard of the state whose substantive law governs the particular cause of action. *Bank of*

*Cumberland v. Aetna Cas. and Sur. Co.*, 956 F.2d 595, 597 (6th Cir. 1992); *Fitzgerald v. Great Cent Insurance Co.*, 842 F.2d 157, 159 (6th Cir. 1988). Under South Carolina law, when ruling on a judgment as a matter of law following a jury trial, the court must view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *Sabb v. South Carolina State Univ.,* 567 S.E.2d 231, 236 (S.C. 2002). If the evidence as a whole is susceptible to more than one reasonable inference, a jury issue is created and the motion should be denied. *Adams v. G.J. Creel & Sons, Inc.,* 465 S.E.2d 84, 85 (S.C. 1995). Further, a trial court's decision will not be reversed unless the jury's verdict is "wholly unsupportable" by the evidence or the court's conclusions of law have been controlled by an error of law. *Sabb*, 567 S.E.2d at 236 (citing *Steinke v. South Carolina Dep't of Labor, Licensing and Regulation*, 520 S.E.2d 142 (S.C. 1999)).

### III.   ANALYSIS

Lynch argues that he is entitled to renewed judgment as a matter of law on Sease and Waltz's promissory estoppel claim. He asserts that he cannot be liable on this claim because: (1) the existence of a merger clause in the 1995 agreement forecloses claims for damages based on promissory estoppel and (2) the record is devoid is of any statement that would warrant damages. According to Lynch, Sease and Waltz failed to establish that he "unambiguously" promised them something other than those promises contained in the contract. In the alternative, Lynch argues that Sease and Waltz failed to present any evidence of damages relating to a promise upon which they allegedly relied.

The 1995 contract contained a merger clause, which provides as follows:

### IV. Total Agreement

This agreement is a total and complete integration of any and all representations and agreements existing between the Participant [Lynch] and the Contract Group [Sease and Waltz] with respect to the subject matter hereof and supersedes any prior oral or written representations and agreements between them.

[Record No. 33, Ex. 1, p. 5] Contrary to Lynch's assertions, the mere existence of a merger clause in a contract does not serve as a barrier to a claim for promissory estoppel. *United States Fidelity and Guaranty Co. v. Phillips*, 359 F. Supp. 2d 189 (D. Conn. 2005) (construing South Carolina law). In *Phillips*, the counterclaim plaintiff alleged that it was induced by misrepresentations to enter into the contract. The court held that, despite the existence of a merger clause contained in the indemnity agreement between the parties, the counterclaim plaintiff was entitled to present evidence of the alleged fraud to a jury and to proceed to trial with its promissory estoppel claim. *Id*. at 208. Specifically, the Court noted that, under South Carolina law, although a valid merger clause terminates the effect of all prior oral agreements, a merger clause is not a valid defense to the claims of fraud and misrepresentation. *Phillips*, 359 F. Supp. 2d at 207.

In the present case, contrary to Lynch's assertions, the fact that the 1995 agreement contained a merger clause does not per se prevent Sease and Waltz from recovering damages under a claim for promissory estoppel. Likewise, the existence of a merger clause does not as matter of law indicate that Sease and Waltz's reliance on Lynch's oral statements were unreasonable. Instead, to determine whether Lynch is entitled to judgment as a matter of law, the Court must examine the evidence presented at trial in a light most favorable to Sease and

Waltz and determine whether it was reasonable for the jury to award damages to Sease and Waltz on their promissory estoppel claim.

Promissory estoppel is an equitable doctrine. *Blanton Enters., Inc. v. Burger King Corp.,* 680 F. Supp. 753, 777 n. 24 (D.S.C. 1988). A cause of action for promissory estoppel exists whenever there is a promise, even without consideration, and "it was intended that the promise should be relied upon and in fact it was relied upon, and if a refusal to enforce it would be virtually to sanction the perpetration of a fraud or would result in other injustice." *Higgins Construction Co., Inc. v. Southern Bell Tel. & Tel. Co.,* 276 S.C. 663, 665-666 (S.C. 1981). The elements of promissory estoppel have since been refined, but they continue to require no more than the existence of a promise and the expected and reasonable reliance of the injured party. *White v. Roche Biomedical La., Inc.,* 807 F. Supp. 1212, 1217 (D.S.C. 1992).

In the instant case, the record contains statements/promises on which the jury could have based liability. First, Sease and Waltz testified at trial that Lynch assured them he would meet with PNC Bank and provide it with the information needed to obtain financing for the purchase of Somerset Oil. However, according to Sease and Waltz, Lynch never intended to fulfill that promise. Instead, they claimed that Lynch was engaged in a scheme to eliminate them from their role in funding the purchase of Somerset Oil to avoid paying them a finder's fee. Sease and Waltz testified that they believed that rather than meet with PNC Bank, Lynch met with an individual from the EPA to discuss the amount of money it would take to clean-up the environmental violations cited against Somerset Oil.

Sease and Waltz testified that Lynch told them that he had, in fact, met with PNC Bank but that the bank was unable to finance the purchase of Somerset Oil because it was no longer going to make "energy loans." Although Lynch presented evidence that he did not meet with EPA officials instead of PNC Bank and never intended to cut Sease and Waltz out of the financing arrangement, it was reasonable for the jury to believe Sease and Waltz's version of events. Based on the evidence presented, the jury could have reasonably concluded that Lynch promised he would meet with PNC Bank and provide it with the information needed to obtain funds for the purchase of Somerset Oil, that Lynch had no intention of fulfilling that promise, that Sease and Waltz relied on the promise, that Lynch was aware of that reliance, and that Sease and Waltz incurred damages based upon reliance of that promise.

With respect to the issue of damages, Sease and Waltz indicated that they devoted substantial time to obtaining funding opportunities for Lynch. They indicated that, *inter alia*, they contacted numerous sources, prepared large funding brochures, extensively reviewed the assets of Somerset Oil, and prepared a financial profile in an attempt to make Somerset Oil attractive for funding. Sease testified that he spend thousands of hours working on the funding opportunities for Lynch and that, at the time, he worked as an investigator and charged an hourly rate of $125.00. He testified that he devoted this time to funding efforts based upon the assurances made by Lynch. Waltz testified that she was a licensed realtor and former banking executive. She stated that she devoted substantial time trying to find funding sources for Lynch. She also indicated that she made her offices available for the project and incurred expenses, such as telephone bills, in an effort to secure financing.

Sease and Waltz also presented evidence at trial indicating that Lynch misrepresented that Somerset Oil had been taken off the market. Specifically, Sease and Waltz testified that Lynch told them that Cy Waddle, then-owner of Somerset Oil, had become sentimental and decided not to sell the company. Waddle testified that he never took Somerset Oil off the market. Sease and Waltz claimed that they relied on Lynch's statement that the company was no longer for sale and suffered damages as a result of that reliance in discontinuing their efforts to find financing.

Through his motion for judgment as a matter of law, Lynch argues that doctrine of promissory estoppel does not apply because the promises upon which Sease and Waltz claim to have relied were part of the contract. While it is true that when a promisor requests performance from a promisee and that performance is bargained for and made part of the contract, recovery for promissory estoppel is generally denied. However, in the instant case, Lynch has provided no authority for the proposition that the mere existence of a contract between two parties precludes a recovery based on promises that were not part of the contract. Under South Carolina law, an action for breach of contract is separate and distinct from an action for promissory estoppel and a judgment on one does estop a party from raising the other. *Link v. School District of Pickens County*, 393 S.E.2d 176 (S.C. 1990). The South Carolina Supreme Court has held that promissory estoppel is not a contract substitute; rather it is an equitable remedy that can exist whenever the requirements of equity are satisfied. *Duke Power Co. v. S.C. Pub. Serv. Comm'n,* 326 S.E.2d 395 (S.C. 1985). Sufficient evidence was presented during the trial of this action to support the jury's determination concerning liability and damages under the promissory estoppel claim asserted by Sease and Waltz.

## IV.     CONCLUSION

Viewing the evidence in a light most favorable to Sease and Waltz, the Court finds that the jury, upon weighing the evidence, could have concluded that Lynch made statements/promises upon which he knew Sease and Waltz would rely and that Sease and Waltz did rely and caused them damage. Because the jury's verdict was supported by sufficient evidence, it is hereby

**ORDERED** that the Plaintiff/Counterclaim Defendant's motion for renewed judgment as a matter of law [Record No. 66] is **DENIED**.

This 2nd day of May, 2006.

Signed By:
*Danny C. Reeves* DCR
United States District Judge